

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ CIVIL ACTION NO

JAMES P; LAMOUNTAIN. DBA   HUGUENOT   )
FARMS @ BONDETT HILL "NEW OXFORD "    )
MASSACHUSETTS circa 1687              )
v.                                    )
ROBERT McCOLLUM                       )
TIMOTHY MCKENNA                       )
JAMES WETTLAUFER                      )
TOWN OF HOLLAND                       )
_____     )                  DECEMBER 3  2009

## COMPLAINT

This action is brought by Plaintiffs against Defendants, who acting under color of state law, charter, ordinance, custom or usage, have intentionally, willfully and unlawfully violated the Plaintiff's civil and due process rights by depriving the Plaintiffs of access to their property, denying the plaintiff their right to conduct commercial agriculture, denying the plaintiffs of an opportunity to be heard, defaming the Plaintiff , Making false criminal and civil  complaints, uttering perjured affidavits and sworn testimony about the Plaintiffs, and intentionally inflicting emotional distress upon the Plaintiffs in violation of their Civil Rights.

## NATURE OF ACTION

This action arises under Title 42 U.S.C. ss 1983, and 1988; the First, Fourth, and Fourteenth Amendments to the United States Constitution and state common law.

1

## JURISDICTION

This Court's jurisdiction is invoked pursuant to Title 28 U.S.C. s 1331, s1343, s 1657, s 2201 and 2202; and the aforementioned constitutional provisions. Plaintiffs further invoke the pendent jurisdiction of this court to hear and decide claims arising under state law.

The amount in controversy exceeds Seventy Five Thousand Dollars ( $ 75,000.00 ), excluding interests and costs.

### A.    PARTIES

1.  At all relative times, the Plaintiff, James P. LaMountain was a Farmer as defined by MGL Ch. 128 Sec. 1A and resides at 14 Lakeridge Drive Holland Massachusetts and was a citizen of the United States and was the Spokesman for The HUGUENOT FARMS @ BONDET HILL *circa 1687* tasked with the Restoration of Agriculture on the Holland Property in question and controls the Agricultural Development Rights to the property. James P LaMountain is also spokesman for the Minor Children Beneficiaries of the James P LaMountain Nominee Trust, such trust holding a one third interest in the ownership of the property. Trust beneficiaries reside in Worcester County.

2.  HUGUENOT FARMS @ BONDET HILL "NEW OXFORD" MA *circa 1687* IS LOCATED IN OXFORD MASSACHUSETTS AND IS THE HOME FARM IN CHARGE OF THE HOLLAND PROPERTY.

3.  At all relevant times the Defendant Robert McCollum was a resident of the State of Massachusetts, and was a citizen of the United States of America and was the Chief of the wetlands division of the Massachusetts Department of Environmental Protection (MADEP) Western Regional Office (WERO) and is sued in his individual and official capacity.

4.  At all relevant times the Defendant Timothy McKenna was a resident of the State of Massachusetts, and was a citizen of the United States of America and was an enforcement official of the wetlands division of the Massachusetts Department of Environmental Protection (MADEP) Western Regional Office (WERO) and is sued in his individual and official capacity.

5.  At all relevant times the Defendant James Wettlaufer was a resident of the State of Massachusetts, and was a citizen of the United States of America , Chairman of the Holland Board of Selectmen and member of the Holland Conservation Commission and is sued in his individual and official capacity.

6. At all times relevant Town of Holland was a Municipality in Massachusetts and Municipal employer.

## FACTS

1. In 2006, 2007, and 2008 James LaMountain a resident of the town of Holland made public complaints about the practices of Town Officials specifically, James Wettlaufer. As a result of such complaints the Plaintiffs have been retaliated against, defamed, harassed, and denied legal, and physical access their property and agricultural property interests.

### A.    THE PROPERTY

2. On May 17th 2006 the Plaintiffs obtained agricultural interest in a 76 acre Parcel of land historically known as the "Blodgett Farm" located at 00 Mashapaug Road in the town of Holland Massachusetts identified by the Town as parcels 10-A-6 and 11-A-3. Property is a Farm conducting Commercial Agriculture as defined by MGL Ch. 128 Sec 1A.

3. The RIGHT TO CONDUCT AGRICULTURE is defined as a "Protected Public Purpose" under article 97 of the Constitution of the Commonwealth of Massachusetts.

4. On 30 May 2006 The Plaintiffs, gave notice to the Defendants that it intended to restore and use the property as a farm. James Wetlauffer denied the existence of a Farm on the property and ignored the Plaintiffs Declaration of Agricultural use on the property.

5. The Farm is bisected by Mashapaug Road but for the purpose of Agriculture under Massachusetts General Law (MGL) Chapter (Ch.) 40A Section (Sec.) 3 is construed as one Parcel.

6. According to MGL Ch. 40A Sec. 3 no bylaw can prohibit Commercial Agriculture on land larger than 5 acres or zoned for agriculture.

7. All but 2 acres of the Property is zoned Agricultural

8. The Property has been recognized by the Commonwealth of Massachusetts who issued exemptions to the Farm and issued Farm ID number 3180 in the Name of Northeast Concepts/Huguenot Farm after an inspection by the Massachusetts State Police who came to the Farm and also reviewed the records of the Farm made a determination that the land was being used primarily for the purpose of Commercial Agriculture. (EXHIBIT-1)

3

9. The Farm is recognized as Farm # 1577 by the United States Department of Agriculture. (USDA) who have been providing technical assistance to the farm since February 2007. (EXHIBIT-2)

10. A ruling by the Springfield Housing Court Justice Dina Fein who made a viewing of the Farm in 2007 has determined that all activities on the property are agricultural in nature and that exemptions to the Clean air act apply according to Massachusetts General Law MGL Ch. 128 Sec. 1A., MGL Ch. 111. Sec. 142L and 310 CMR 7.07 (3) (c). The Defendants continue to ignore this Judicial Ruling. (EXHIBIT-3)

11. There is an existing Driveway and cart road remains on the property running east to west on the farm parallel and 50 to 100 feet North of Amber Brook.

12. There was residential development with structures on the property in the residential zone at the time of purchase with frontage along Mashapaug and Chaffee Road. (EXHIBIT-4)

13. This pre developed area was declared as "land slated for residential development" in the 2007 Housing Court ruling and makes up approx 6 acres.

14. All but 2 acres of the 6 acre residential zone slated for development was divested from the Farm in 2007-2008 and there were no plans for non agricultural development on the property.

15. The remaining 2 acres of residential land will be used for a FarmHouse/Farm Office complex.

16. Any future non agricultural development will be non residential and secondary and symbiotic to the primary purpose of commercial agriculture for the land.

      B.                                          **THE WORK**

17. The primary purpose of the work is for Normal Improvement and Normal Maintenance of Land in Agricultural use with the current tasks performed being primarily Agricultural Land Clearing for the restoration of Pastures to provide forage for up to 30-50 head of organically grown free range Cattle for Beef ., The work is identified By the USDA as Field 1 tract #2017. Secondary work is to harvest timber for firewood and sawlogs for commercial as well as personal owners use. All facets of the work have been and are being conducted in compliance with 310 CMR 10.04.

18. THE WORK IS EXEMPT FROM THE MASSACHUSETTS WETLAND PROTECTION ACT , MGL Ch. 131 Sec. 40 which states in pertinent part. *"The provisions of this section shall not apply to any mosquito control work done under the provisions of clause (36) of section five of chapter forty, of chapter two hundred and fifty-two or of any special act; to maintenance of drainage and flooding systems of cranberry bogs, to work performed for normal maintenance or*

*improvement of land in agricultural use or in aquacultural use; or to any project authorized by special act prior to January first, nineteen hundred and seventy-three."*

19. USDA has been providing technical assistance on the property since FEB. 2007 and has inspected the work including the maintenance of existing and new erosion and sediment controls on the property without recommendations for the need of further controls for the work in progress. (EXHIBIT-2)

20. None of the work being conducted is for the purpose of residential development. A permit has been issued by the town of Holland to construct an Agricultural Out Building on the property as a Primary Structure, and site plan review was waived by the Planning Board of Holland due to Agricultural Exemptions. (EXHIBIT-5)

21. Engineers from Sherman and Fredryk have provided calculations for the geometry needed for stormwater management and sediment and erosion control structures for the work.

22. Environmental Scientists Milone and MacBroom, Eco Tech, and Morris Associates have provided Wetland Resource area delineation, Historical baseline, and provide Technical assistance for erosion and sediment control.

23. C.     <u>FALSE COMPLAINTS, MADE BY THE DEFENDANTS ,ACCESS TO PROPERTY RESTRICTED, DEINIAL OF EXEMPTIONS AFFRORDED TO AND RIGHTS TO CONDUCT AGRICULTURE, INCLUDING ARBITRARY DENIALS AND DEFAMATION</u>

24. The property has an intermittent stream running approx 2000 feet along the Southern property line called Amber Brook.

25. Land next to an intermittent stream is a buffer zone not a protected riverfront resource area.

26. Documentation and DEP Determinations have ruled that Amber Brook is an intermittent stream opposite the work zone. (EXHIBIT-6)

27. The Defendants have knowingly and falsely reported and falsely testified that Amber Brook is a river with a 200 foot riverfront area.

28. For most purposes other than agriculture land next to a river is a protected resource area subject to a 200 foot non agricultural riverfront area.

29. The Defendants have falsely declared the Plaintiffs to be in violation of the Massachusetts Wetland Protection act MGL Ch. 131 Sec 40 and have initiated several administrative and legal actions under the wetland protection act for working in a 200 foot riverfront area of Amber brook. that have resulted in the assessment of penalties exceeding 150 thousand dollars. (EXHIBIT-7)

30. The Defendants knew at all times relevant that the wetland protection act MGL Ch. 131 sec 40 "SHALL NOT APPLY" to NORMAL IMPROVEMENT OR MAINTENANCE OF LAND IN AGRICULTURAL USE as defined in MGL Ch. 131 Sec. 40 and 310 CMR 10.04.

31. Even if Amber Brook was a River The defendants knew at all times relevant the protected riverfront is 100 feet for New Agricultural purposes as defined in 310 CMR 10.58 3. c. and less for pre existing agricultural uses defined under 310 CMR 10.04.

32. The Defendants knowingly did conspire to make, and did make false reports and perjured testimony in the form of several and continuous affidavits, reports, enforcement orders, penalty assessment notices, over the past four years including a superior court lawsuit that resulted in the assessment of a six figure fine as a direct result of their knowing and willful false reports, affidavits, complaints and testimony.

33. On August 24,2006 the MADEP WERO did issue notice to Plaintiff and Defendants that access to the property using pre existing access off of Mashapaug Road is allowed to access upland portions of the property..

34. The Defendants in 2009 successfully won Judgments based on their false reports, perjured testimony, complaints and perjured affidavits that includes a permanent injunction that does deprive the Plaintiffs of access to and the right to conduct protected commercial agriculture on the farm. (EXHIBIT -7)

35. Cost to defend against the false reports, testimony, complaints and affidavits, by the Defendants is approaching six figures.

36. Further false reports by the Defendants have stated the Plaintiffs are running untreated sand and silt into the Hamilton Reservoir across Mashapaug Road causing a sediment delta to form in Hamilton Reservoir..

37. Defendants have been provided with documentation and reports from multiple environmental experts and know full well that Environmental Scientists from Milone and MacBroom and Eco-Tech have investigated, determined and reported that the Sediment Delta in the Hamilton Reservoir pre dates the Plaintiffs ownership of the land and the source of the sediment is un managed runoff from paved and dirt Private and Town owned Roads South and West of the Farm that are draining directly into Amber Brook and across land of Farm into Hamilton Reservoir also causing erosion portion of the Plaintiff's Farm. The Defendants refuse to cease running untreated runoff over the Plaintiffs farm. (EXHIBIT-8)

38. The above mentioned runoff from town owned and maintained roads has created a plume of silt in the lake that is visible from space and the Defendant has filed several complaints with the Defendants on the matter

6

39. Further false reports, testimony, affidavits, and complaints by the Defendants have falsely stated that there are no stormwater drainage, erosion control, or sedimentation structures on the Plaintiffs farm property.

40. Defendant know full well from personal inspections and from documentation and reports of Environmental Consultants, Scientists, and Engineers, that all runoff from the farm work zone is accounted for and treated as needed using pre existing and restored drainage infrastructure as well as new erosion sedimentation control structures such as check dams, detention ponds, sedimentation basins, plantings, mulch, armoring, swales, dikes, berms, haybales, and silt fences before it leaves the property.

41. False reports, complaints and sworn testimony by Defendants have stated the Plaintiffs are currently engaged in residential development not agriculture.

42. Defendants know the area slated for residential development was divested from the property.

43. Defendants know of and have ignored prior Judicial Rulings of the Housing Court, Hampden Superior Court, (EXHIBIT-10) Massachusetts General Law, and Commonwealth of Mass Regulations that confirm and allow by right the Plaintiffs protected rights to conduct Agricultural and claim to agricultural exemptions to the wetland protection act.

    D.    <u>CONSTRUCTIVE TAKING OF THE LAND.</u>

44. Defendants did seek and obtained in December 2008 a court order to access our land for the purpose of stability inspections after falsely stating runoff from our land was running across Mashapaug Road into the Hamilton reservoir.

45. Defendants did seek and obtained in December of 2008 a court order placing an attachment on the farm in the amount of 250 thousand dollars for alleged violations of the wetland protection act.

46. For runoff to leave the Farm and run across Mashapaug road it would need to run uphill.

47. According to reports of numerous Environmental Scientists it is runoff and silt from town maintained roads that is running over and under mashapaug road into the Hamilton Reservoir. (EXHIBIT-8)

48. Defendants did conspire to and continue to deny the Plaintiffs legal access from an abutting public way to Plaintiffs property and have received judgments on technicalities totaling Hundreds of Thousands of Dollars without the merits of the case ever being heard.

49. Right of access to a public way is appurtenant to ownership of land and to deny access is in itself a constructive taking of the land.

50. Plaintiffs are unable to obtain financing on land with judgments and attachments and risk of foreclosure is imminent.

51. Sacred Property of the Confederacy of Nipmuc Indian Tribes on Bondet Hill at Huguenot Road in Oxford Massachusetts is pledged as collateral for the Holland Farm and at risk. (EXHIBIT-9)

52. The Defendants stand to obtain ownership of the land due to their illegal actions, false reports, perjured testimony and affidavits, and false complaints.

53. The Defendants stand to gain promotion and other tangible and intangible benefits from their jobs as a result of their willful illegal misconduct and arbitrary denials of our civil rights.

### E. PUBLIC SPEECH BY THE PLAINTIFF

54. In 2007 and 2008 Plaintiff did file civil and criminal complaints against James Wetlauffer.

55. In 2008 Plaintiff did blog on the internet at www.01521.com, write letters to the editor, and publically opposed corrupt activities in the town of Holland by James Wettlaufer and other public officials. These activities included making Complaints that led to the resignation and imprisonment of the Holland Police Chief.

### F. FALSE CRIMINAL COMPLAINT MADE AGAINST THE PLAINTIFF

56. On August 31st Environmental Police working with MADEP WERO did come onto the farm without permission or order for other than stability inspections in violation of standing court order that allows access for the purpose of stability inspections only and arrested the Plaintiff for possessing wild turkeys and conducting cook fires without a permit without probable cause.

57. Cook fires do not require a permit and were not in the control of the Plaintiff.

58. Turkeys belong to Michael LaMountain and were not in the control of the Plaintiff.

**FIRST COUNT : VIOLATION OF JAMES P. LAMOUNTAINS FOURTH AMENDMENT RIGHTS (FALSE ARREST), PURSUANT TO 42 U.S.C. § 1983, AS TO TIMOTHY MCKENNA AND MADEP WERO.**

1. Paragraphs 1 through 57 are hereby incorporated into this the First Count, as if set forth in their entirety herein.

4. On 31 August 2009 LaMountain was falsely arrested without probable cause while he was working on a foundation of a permitted barn on the Farm.

5. James LaMountain was falsely arrested charged with burning without a permit and possessing wild turkeys.

7. The Defendants, violated the plaintiff's Fourth Amendment rights as follows: (a) The defendant, each and all of them, failed to secure to the plaintiffs, unlawfully deprived the plaintiff, or caused the plaintiff to be unlawfully deprived of rights secured to them by the United States Constitution and by Title 42 United States Code § 1983, et . seq.; (b) The defendant falsely arrested the Plaintiffs without probable cause.

8. As a result of the violation of the plaintiffs' civil rights, as aforesaid, the plaintiffs were caused to suffer the following injuries, but this claim is not limited to the following injuries, some or all of which are likely to be permanent in nature:
   (a) Loss of dignity, humiliation, and severe emotional pain and suffering;
(b) anxiety, fear, and trauma, and costs associated with being falsely arrested; and
(c) damage to their name and reputation.

## SECOND COUNT: VIOLATION OF FOURTEENTH AMENDMENT-EQUAL PROTECTION CLAUSE (CLASS OF ONE) RIGHTS OF PLAINTIFFS BY ALL DEFENDANTS

1. Paragraphs 1 through 57 of the Facts are hereby incorporated into this the Second Count, as if set forth in their entirety herein.
2.     The defendants, each and all of them, failed to secure to the plaintiffs, unlawfully deprived the plaintiffs, or caused the plaintiffs to be unlawfully deprived of rights secured to them by the Fourteenth Amendment of United States Constitution and by Title 42 United States Code § 1983, et . seq.

3. The Plaintiffs were irrationally and intentionally treated differently from other people who are similarly situate as follows:
(a) The Defendants made unfounded complaints and false complaints to the MASSDEP and Attorney General's office (AGO)  against the Plaintiffs for maintaining the Property and had not previously made false complaint about other similarly situated Town residents and neighbors of the Plaintiff;
(b) The Defendants repeatedly denied or ignored the Plaintiffs' petitions filed with the Defendants without any basis for the denials when similarly situated property owners were not denied the same requests;
(c) The Defendants barricaded access to the Plaintiffs' Property and had not done that to other Town Residents;
(d) The Defendants issued Enforcement Orders and pursued fines against the Plaintiffs and did not issue Enforcement Orders or pursue fines against other similarly situated Town residents or Farms.
 4. The Plaintiffs were treated differently from similarly situated individuals in an irrational manner, in violation of the Fourteenth Amendment.

5. The Defendants did not have a legitimate government policy that can justify the differential treatment that the Plaintiffs suffered.

6. The similarity in circumstances and difference in treatment that the Plaintiffs suffered were sufficient to exclude the possibility that the defendants acted on the basis of a mistake.
7. The plaintiffs were intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy and the Defendants acted with an improper purpose.

8. Each of the above named Individual Defendants participated in this misconduct, were aware of their corrupt and illegal activity and their blatant disregard of the plaintiffs' constitutional and civil rights.
9. As a result of the violation of the plaintiffs' civil rights, as aforesaid, the plaintiffs were caused to suffer the following injuries, but this claim is not limited to the following injuries, some or all of which are likely to be permanent in nature:
   (a) Loss of dignity, humiliation, and severe emotional pain and suffering;
(b) damage to their name and reputation; and
(c) loss and damage to property.

**THIRD COUNT: VIOLATION OF THE PLAINTIFFS' FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS AS TO ALL OF THE DEFENDANTS.**

1. Paragraphs 1 through 57 are hereby incorporated into this the Third Count, as if set forth in their entirety herein.
2. During all times relevant to this complaint, the defendants violated plaintiffs' constitutional rights by depriving them of liberty without procedural due process of law.
3. The Plaintiffs have been deprived of their agricultural property rights and interest in the access to their property as a result of the Defendants administrative action.
4. The defendants, each and all of them, failed to secure to the plaintiff, unlawfully deprived the plaintiff, or caused the plaintiff to be unlawfully deprived of rights secured to them by the United States Constitution pursuant Title 42 U.S.C. § 1983, et seq. by their promotion and acquiescence of the aforementioned activities.
5. Defendant's actions are in violation of the aforementioned constitutional and statutory provisions and entitle the Plaintiff to immediate injunctive relief pursuant to the aforementioned jurisdictional statutes and constitutional protection.
6. As a result of the violation of the plaintiffs' civil rights, as aforesaid, the plaintiffs were caused to suffer the following injuries, but this claim is not limited to the following injuries, some or all of which are likely to be permanent in nature:
(a) Loss of dignity, humiliation, and severe emotional pain and suffering;
(b) loss of privacy within the sanctity of their farm;
(d) lost income;
(e) damage to their name and reputation; and
(f) loss and damage to property

**FOURTH COUNT: VIOLATION OF THE PLAINTIFFS' FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS AS TO ALL OF THE DEFENDANTS.**

1. Paragraphs 1 through 57 are hereby incorporated into this the Fourth Count as if set forth in their entirety herein.
2. During all times relevant to this complaint, the defendants violated plaintiffs' constitutional rights by depriving them of liberty without due process of law by carrying out a pattern of outrageous conduct .
3. During all times relevant to this complaint, the plaintiff was subjected to continual and progressive harassment and intimidation by the defendants, making false report, complaints, sworn affidavits and perjured testimony under oath all in violation of the plaintiff's constitutional rights.

4. The defendants, each and all of them, failed to secure to the plaintiff, unlawfully deprived the plaintiff, or caused the plaintiff to be unlawfully deprived of rights secured to him by the United States Constitution pursuant Title 42 U.S.C. § 1983, et seq. by their promotion and acquiescence of the aforementioned activities.

5. The actions of the defendants were and are extreme and outrageous, shocking to the sensibilities of any reasonable person and will continue unabated unless strictly prohibited by the court. Defendant's actions are in violation of the aforementioned constitutional and statutory provisions and entitle the Plaintiff to immediate injunctive relief pursuant to the aforementioned jurisdictional statutes and constitutional protection.

As a result of the violation of the plaintiffs' civil rights, as aforesaid, the plaintiffs were caused to suffer the following injuries, but this claim is not limited to the following injuries, some or all of which are likely to be permanent in nature:

(a) Loss of dignity, humiliation, and severe emotional pain and suffering;

(b) loss of privacy within the sanctity of their home;

(c) lost income;
(d) damage to their name and reputation; and
(e) loss and damage to property.

FIFTH COUNT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY ALL DEFENDNATS AGAINST THE PLAINTIFF

1. Paragraphs 1 through 57 are hereby incorporated into this the Fifth Count, as if set forth in their entirety herein.

2. The defendants, intended to inflict severe emotional distress upon the plaintiffs, and knew or should have known at all times that their acts or omissions as alleged herein would result in severe emotional distress to the plaintiffs.

3. The acts and omissions of the defendants were extreme, outrageous and dangerous.
4. As a direct and proximate result of said acts or omissions, the plaintiff suffered emotional distress.
5. The plaintiff claims damages.

WHEREFORE, the plaintiffs claims judgment against the defendants as follows:
(1) Compensatory money damages;
(2) Punitive damages as provided by 42 U.S.C. §§ 1983, and other applicable law;
(3) Attorney's fees and costs as provided by 42 U.S.C. §§ 1988, and other applicable law;
(4) Lost and future lost wages; and
(5) Such other relief in law or equity as the Court may deem appropriate.
(6) A Jury trial is requested.

Respectfully Submitted,

*[signature]* 3 Dec 2009
James P LaMountain   Pro Se Plaintiff Farmer.

DBA Huguenot Farms@ Bondet Hill, "New Oxford" MA  circa 1687

14 Lakeridge Drive,   Holland Ma  01521…..413 245 4502   TheeDuke47@aol.com

11